460 P.2d 666

Arthetta M. CLUFF, a widow, Appellant,

v.

FARMERS INSURANCE EXCHANGE, dba Farmers Insurance Group, and Jerry E. Cranmer, Appellees.

No. 1 CA–CIV 800.

Court of Appeals of Arizona,
Division 1.
Department B.
Nov. 10, 1969.
Rehearing Denied Dec. 9, 1969.
Review Denied Jan. 6, 1970.

Green & Berman, by Norman E. Green and David M. Berman, Phoenix, for appellant.

Browder, Gillenwater & Daughton, by Donald Daughton, Phoenix, for appellees.

JACOBSON, Judge.

In this action dealing with the elusive torts arising out of mental suffering, appellant-plaintiff Arthetta M. Cluff seeks damages for an alleged intentional infliction of mental distress and invasion of privacy against appellees-defendants, Farmers Insurance Exchange dba Farmers Insurance Group and Jerry E. Cranmer.

The Superior Court of Maricopa County, The Honorable Howard F. Thompson, presiding, granted defendant's motion to dismiss for failure to state a claim as to both counts of plaintiff's amended complaint. We are called upon to determine whether or not plaintiff's amended complaint does in fact state a claim for intentional infliction of mental distress or for invasion of privacy.

Count I of this complaint, seeking damages for intentional infliction of mental distress, alleges the following facts.

Some three months after the death of her minor son plaintiff retained an attorney to represent her in a wrongful death action. The attorney notified the defendant insurance carrier of the retainer and directed that all further contact relating to the death of plaintiff's son be made through the attorney. During the three months prior to the retainer of the attorney, plaintiff had been contacted "on a number of occasions by (defendant Cranmer) * * * relative to a settlement * * * for the wrongful death of plaintiff's son" and that on these occasions defendant Cranmer had

"threatened and cajoled plaintiff (to accept) a certain settlement." The threatening and cajoling consisted of statements to the effect that if plaintiff hired an attorney she would probably not recover damages for the death of her son because the laws of New Mexico (where the death occurred) would prohibit recovery. The threats and cajoling of defendant Cranmer were "false and maliciously made." Shortly after the attorney had been retained, defendant Cranmer contacted the plaintiff at which time he told her that he had received a letter from her attorney; that "he hated the fact" that she had hired a lawyer "because he didn't think that her lawyer would win the case"; that the most plaintiff would get was what the insurance company was offering whereas she might get nothing at all by taking the matter into court; and that if she changed her mind about being represented by counsel to have the attorney send them a letter to that effect after which the insurance company would get the money to her "because she probably needed it." This conduct of the defendant was done "wilfully, intentionally, and maliciously * * * to inflict mental suffering and emotional distress upon the plaintiff so as to cause her to settle her claim without the benefit of counsel for the benefit and advantage of defendants." The conduct of defendant "caused (plaintiff) great mental anguish upset, and harm" and was done "for the purpose of causing the plaintiff distress or with the knowledge on the part of the defendants that severe emotional distress would be substantially certain to be produced by the defendant's conduct."

Count II of plaintiff's Complaint restated the allegations of Count I above, and alleged further that the acts of the defendant "maliciously and unlawfully violated plaintiff's right of privacy" in violation of Article II, Sec. 8 of the Arizona State Constitution, A.R.S. Count II also alleged that these acts "amounted to intentional, wilful, malicious and wanton intrusion upon the plaintiff's seculsion (sic) and solitude, and further amounted to intrusions upon the plaintiff's private affairs."

■ On reviewing the granting of a motion to dismiss, this court must assume the facts stated in the complaint to be true, but this is true only as to such facts as are well pleaded and does not apply to conclusions of law, or unreasonable inferences drawn by the pleader from the facts alleged. Davis v. State, 1 Ariz.App. 264, 401 P.2d 749 (1965); Dockery v. Central Arizona Light & Power Co., 45 Ariz. 434, 45 P.2d 656 (1935); Laing v. Laubach, 233 Cal.App. 2d 511, 43 Cal.Rptr. 537 (1965).

■ Arizona recognizes the tort of intentional infliction of emotional distress. Savage v. Boies, 77 Ariz. 355, 272 P.2d 349· (1954). However, it is generally held that the claim cannot arise out of conduct which merely hurts one's feelings. Wallace v. Shoreham Hotel Corp., 49 A.2d 81 (D.C. Mun.App.1946). As is pointed out in Restatement (Second) Torts Section 46, Comment (d) (1965);

> "* * * Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim 'Outrageous!'"

■ Even if the defendant's acts are done "wilfully, intentionally and maliciously" with "intent to inflict mental suffering and emotional distress," it becomes the duty of the court in the first instance, as society's conscience, to determine whether the acts complained of can be considered as extreme and outrageous conduct in order to state a claim for relief. Restatement (Second) Torts Sec. 46, Comment (h) (1965). In our opinion, the act of an insurance adjuster in simply contacting a person to whom his company may be liable in order to obtain a settlement of that claim, even after retention of counsel, does not *in and of itself,* amount to extreme or outrageous conduct. Although several insurance cases

have held an insurance company liable because of conduct of their adjuster in attempting to settle claims, in all such cases not only was contact made by the adjuster, but other aggravated acts followed. For example, in Interstate Life & Accident Co. v. Brewer, 56 Ga.App. 599, 193 S.E. 458 (1937) the insurance adjuster contacted the plaintiff while she was sick in bed recovering from a heart attack. The adjuster upbraided her as to the amount of other health policies she had; advised her that his company was cutting her payments to $2.50 a week, and when plaintiff objected to this, the adjuster threw a handful of coins in her face. When the plaintiff started screaming for her niece to contact her doctor, the adjuster yelled at her in a loud and angry voice "you don't need a doctor, you ought to die!" Such aggravated conduct is not present here.

■ The course of human conduct even in our "civilized" community has amply shown that self seeking and inconsideration are a common trait in man's relationship with man. The law does not purport to protect individuals from the minor manifestations of this human conduct. In our opinion, the acts alleged to have been committed by the defendant Cranmer fall into this category. While defendant's actions may be subject to criticism from an ethical standpoint, we do not believe the conduct as alleged in plaintiff's complaint was extreme or outrageous in the context of general social acceptability.

Therefore, the defendant's conduct in this case having failed to meet the test necessary to state a claim for intentional infliction of emotional distress, the trial court properly granted defendant's motion to dismiss Count I of plaintiff's complaint.

■ Count II of plaintiff's complaint alleged that the acts of the defendants complained of in Count I constituted an "invasion" of her privacy giving rise to a claim for damages from the resulting emotional distress. Plaintiff contends that Article II, Sec. 8 of the Arizona Constitution gives her a private right which the defendants "disturbed." This section is as follows:

"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

This constitutional provision was not intended to give rise to a private cause of action between private individuals, but was intended as a prohibition on the State and has the same effect as the Fourth Amendment of the Constitution of the United States. Turley v. State of Arizona, 48 Ariz. 61, 59 P.2d 312 (1936); cf. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

■ Although the existence of the constitutional provision does not help the plaintiff here, Arizona is among the majority of states which recognize, in one form or another, a cause of action between private individuals for the tort of "invasion of privacy." Reed v. Real Detective Pub. Co., 63 Ariz. 294, 162 P.2d 133 (1945).

Professor Prosser has classified the tort of invasion of the right of privacy into four separate causes of action which he categorizes as follows:

"1. Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs.

"2. Public disclosure of embarrassing private facts about the plaintiff.

"3. Publicity which places the plaintiff in a false light in the public eye.

"4. Appropriation, for the defendant's advantage, of the plaintiff's name or likeness." Prosser, Privacy, 48 Calif.L.Rev. 383, 389 (1960).

■ While Arizona recognizes the existence of the tort as it appears in Professor Prosser's 4th category, Reed v. Real Detective Pub. Co., supra, and possibly as it exists in categories 2 and 3, cf. Pegler v. Sullivan, 6 Ariz.App. 338, 432 P.2d 593 (1967), Arizona has not passed upon the recognition of the tort in the first category, at least not as a tort for invasion of privacy.

Count II of plaintiff's complaint purports to state a claim which would fall into Prosser's first category. Upon analysis of the decisions cited by Professor Prosser and the decisions of other courts, this type of invasion of privacy is strikingly similar to the tort of intentional infliction of mental distress previously discussed in this opinion. The basis of the wrong in both torts is clearly the infliction of mental distress or suffering and not merely the "trespassory" intrusion. Compare Savage v. Boies, supra, with Housh v. Peth, 165 Ohio St. 35, 133 N.E.2d 340 (1956) a privacy action arising out of hounding telephone calls by a creditor. Moreover it appears that the mental anxiety suffered in both torts must be more severe than merely hurt feelings. Compare Pinkerton National Detective Agency, Inc. v. Stevens, 108 Ga.App. 159, 132 S.E.2d 119 (1963), an invasion of privacy case, with Peoples Finance & Thrift Co. v. Harwell, 183 Okl. 413, 82 P.2d 994 (1938).

In comparing the two types of torts under discussion here, Professor Prosser makes this comment:

"One cannot fail to be aware, in reading privacy cases, of the extent to which defenses, limitations and safeguards established for the protection of the defendant in other tort fields have been jettisoned, disregarded, or ignored. Taking intrusion first, the gist of the wrong is clearly the intentional infliction of mental distress, which is now in itself a recognized basis of tort liability. Where such mental disturbance stands on its own feet, the courts have insisted upon extreme outrage, rejecting all liability for trivialities, and upon genuine and serious mental harm, attested by physical illness, or by the circumstances of the case. But once 'privacy' gets into the picture, and the fact of intrusion is added, such guarantees apparently are no longer required." 48 Cal.L.Rev., supra, at 422.

We are of the opinion that the safeguards afforded under the tort of intentional infliction of mental distress as enumerated in Savage v. Boies, supra, should be retained.

For the foregoing reasons, Count II of plaintiff's complaint did not state a claim for relief and the trial court properly granted defendant's motion to dismiss this count.

Judgment affirmed.

EUBANK, P. J., and HAIRE, J., concur.