Larry LUSTER and Breck Luster, Plaintiffs-Appellants,

v.

COLUMBIA MUTUAL INSURANCE CO., a corporation,

and

General Adjustment Bureau, a corporation, Defendants-Respondents.

No. 12111.

Missouri Court of Appeals, Southern District, Division Three.

Nov. 16, 1981.

BILLINGS, Presiding Judge.

This appeal arises out of an unsuccessful effort by plaintiffs to prosecute a claim against the individual defendant's liability insurance carrier and its adjuster in their suit for the wrongful death of their daughter. The trial court dismissed the count against respondents in which plaintiffs were seeking damages for severe emotional distress, intentionally and recklessly caused by extreme and outrageous conduct. We affirm.

In Count I of their petition, plaintiffs sought damages from Smith and James for alleged negligent acts which resulted in their daughter's death. In Count II, they sought actual and punitive damages against respondents because of the activities of Stevens, agent of respondent General Adjustment Bureau, in his unsuccessful efforts to effect a settlement of plaintiffs' claim for the death of their daughter. Upon motion the counts were severed, and respondents' motions to dismiss for failure of Count II to state a claim upon which relief could be granted were sustained. The order of dismissal was deemed to be a final judgment for purpose of appeal under Rule 81.06, V.A.M.R., and this appeal followed.

In reviewing the action of the trial court, we accept as true the facts properly pleaded in Count II, giving the averments a liberal construction, and making those reasonable inferences fairly deducible from the facts pleaded. *Concerned Parents v. Caruthersville School District*, 548 S.W.2d 554 (Mo. banc 1977). However, the conclusions of the pleader cannot be taken as true and must be disregarded. *Cady v. Hartford Accident and Indemnity Company*, 439 S.W.2d 483 (Mo.1969).

In *Pretsky v. Southwestern Bell Telephone Company*, 396 S.W.2d 566 (Mo.1965), our supreme court recognized and accepted the Restatement's view that a right of action does exist for damages for severe emotional distress, intentionally and recklessly caused, by "extreme and outrageous conduct." *Warrem v. Parrish*, 436 S.W.2d 670 (Mo.1969). The Restatement (Second) of Torts, § 46, at 71 (1965) states:

"Outrageous Conduct Causing Severe Emotional Distress. (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and if bodily harm to the other results from it, for such bodily harm."

Comment *d.* of § 46, states: "*Extreme and outrageous conduct.* The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"

The commentary continues: "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. * * *"

In Comment *h.*, we are told that it is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so. See *Pretsky v. Southwestern Bell Telephone Company*, supra.

Plaintiffs' Count II alleged:

" . . .

4. Little Laren Luster was severely injured on Saturday, August 25, 1979. Her death occured [sic] early Sunday morning, August 26th. The child was buried on Saturday, September 1st.

5. On Monday, August 27, 1979, Douglas Stevens, agent for General Adjustment

Bureau who was in turn agent for Columbia Mutual Insurance Company, went to the residence of the Plaintiffs at 2715 Chrysler, Cape Girardeau, Missouri and finding the bereaved parents not at home left his card advising the Plaintiffs to contact him.

6. As a result of the initiation made by Douglas Stevens, the Plaintiffs called Douglas Stevens [sic] number, was [sic] advised he was not there and that Stevens would call back.

7. Stevens thereafter contacted the Lusters, Plaintiffs herein, and advised them to get all of their bills together, be prepared to sign a release so that the bills could be paid for them. At that time and place, prior to the burial of little Laren Luster, Douglas Stevens possessed superior knowledge and did not fully explain his position to the Lusters all in an attempt to quickly adjust the wrongful death claim and secure releases thereon for the benefit of Columbia Mutual Insurance Company, the liability insurer.

8. Thereafter, the said Douglas Stevens continued to contact the Lusters in an effort to adjust the claim and repeatedly advised them he was working for the insurance company and in order to pay the hospital bills, funeral bills and so on that certain forms would have to be signed.

9. The later contacts made by Douglas Stevens continued on a continuing and persistant [sic] basis and went so far as to contact the Plaintiffs at their place of employment in hopes of settling the wrongful death claim before the Lusters had an opportunity to seek legal counsel.

10. The Lusters advised Stevens that they were seeking legal counseling in the matter concerning the death of their daughter but in spite of this the said Douglas Stevens continued to attempt to adjust the case on a favorable basis by contacting the Plaintiffs and claiming that certain forms needed to be signed right away, that the company was ready to make a settlement all of which were necessary in order to see that the bills were paid.

11. All of these actions enumerated in Count II of this Petition took place very shortly after the death of Laren J. Luster.

12. The actions of Columbia Mutual Insurance Company, its agent, General Adjustment Bureau and its agent, Douglas Stevens were an unreasonable intrusion into the seclusion and right to solitude of the Plaintiffs. The intrusion is and was highly offensive to a reasonable person, was in fact unreasonable and oppressive in the Defendant's methods to settle a claim before full knowledge of the circumstances could be realized by the Plaintiffs and before they had any type of reasonable mourning period.

13. As a result of the inhuman, intentional, reckless, outrageous, shocking, atrocious and indecent conduct on the part of the Defendants and their agents, the Plaintiffs were caused to suffer severe emotional distress, outrage, shock, mental pain, anxiety, mortification and nervousness.

14. The Defendants and their agents at all times herein well knew of the recent, tragic loss of Laren Luster to her parents, Plaintiffs herein, but intentionally disregarded the same in order to gain a pecuniary benefit for themselves."

The gravamen of plaintiffs' petition is that the insurance adjuster "continued to contact the Lusters in an effort to adjust the claim and repeatedly advised them he was working for the insurance company and in order to pay the hospital bills, funeral bills and so on that certain forms would have to be signed." The claimed "outrage" stems from the fact that the complained of contact came during plaintiffs' period of mourning. The conduct, however, falls more under the category of "occasional acts that are definitely inconsiderate and unkind" rather than acts that are "utterly intolerable in a civilized community." Re-

statement (Second) of Torts, Comment *d*, at 73.

In *Cluff v. Farmers Insurance Exchange*, 10 Ariz.App. 560, 460 P.2d 666, 39 A.L.R.3d 731 (1969), plaintiff sought damages for an alleged intentional infliction of mental distress and invasion of privacy against the defendant insurance company and its adjuster, Cranmer. The court affirmed the lower court's dismissal of the complaint for failure to state a claim. The complaint alleged the following facts:

"Some three months after the death of her minor son plaintiff retained an attorney to represent her in a wrongful death action. The attorney notified the defendant insurance carrier of the retainer and directed that all further contact relating to the death of plaintiff's son be made through the attorney. During the three months prior to the retainer of the attorney, plaintiff had been contacted 'on a number of occasions by (defendant Cranmer) * * * relative to a settlement * * * for the wrongful death of plaintiff's son' and that on these occasions defendant Cranmer had 'threatened and cajoled plaintiff (to accept) a certain settlement.' The threatening and cajoling consisted of statements to the effect that if plaintiff hired an attorney she would probably not recover damages for the death of her son because the laws of New Mexico (where the death occurred) would prohibit recovery. The threats and cajoling of defendant Cranmer were 'false and maliciously made.' Shortly after the attorney had been retained, defendant Cranmer contacted the plaintiff at which time he told her that he had received a letter from her attorney; that 'he hated the fact' that she had hired a lawyer 'because he didn't think that her lawyer would win the case'; that the most plaintiff would get was what the insurance company was offering whereas she might get nothing at all by taking the matter into court; and that if she changed her mind about being represented by counsel to have the attorney send them a letter to that effect after which the insurance company would get the money to her 'because she probably needed it.'" 460 P.2d at 667–668.

In following the Restatement view, the court noted that in the cases in which an insurance company had been held liable because of the adjuster's conduct in attempting to settle a claim, other "aggravated acts" followed the adjuster's contact with the party. The court then said:

"The course of human conduct even in our 'civilized' community has amply shown that self seeking and inconsideration are a common trait in man's relationship with man. The law does not purport to protect individuals from the minor manifestations of this human conduct. In our opinion, the acts alleged to have been committed by the defendant Cranmer fall into this category. While defendant's actions may be subject to criticism from an ethical standpoint, we do not believe the conduct as alleged in plaintiff's complaint was extreme or outrageous in the context of general social acceptability." Id. at 669.[1]

We think that while the well pleaded facts in the petition before us demonstrate a callous indifference by adjuster Stevens of the bereaved plaintiffs in the darkest of hours, we are of the opinion that such activities fall into the category of inconsiderate and unkind indignities but do not measure up to the extreme and outrageous conduct which the law recognizes to be actionable.

The judgment is affirmed.

All concur.

---

1. The court further held plaintiffs' Count II, alleging the acts constituted an invasion of her privacy, was "strikingly similar" to the tort set forth in Count I and was to be governed by the same test. See *Pretsky v. Southwestern Bell Telephone Company*, 396 S.W.2d 566, 570 (Mo. 1965).