Vicki COFFIN, Plaintiff,

v.

SAFEWAY, INC.; Ray Lopez and Does 1 through 50, inclusive, Defendants.

No. 03–470–PHX–ROS.

United States District Court, D. Arizona.

June 29, 2004.

R. Richard Farnell, Ronald E. Norman, Farnell & Norman, Newport Beach, CA, for Plaintiff.

Peter Christopher Prynkiewicz, Littler Mendelson PC, Phoenix, AZ, for Defendants.

## ORDER

SILVER, District Judge.

Plaintiff has alleged claims of sexual harassment discrimination pursuant to Title VII, 42 U.S.C. § 2000e–2 *et. seq.* against her employer Safeway, Inc., her supervisor Ray Lopez, and other unnamed defendants. She also has alleged state law claims of intentional infliction of emotional distress ("IIED") against all defendants, and negligence against Safeway. On March 31, 2004, the Court entered an Order (Doc. # 18) ruling on Lopez's pending Motion to Dismiss all claims against him. In that Order, the Court promised that a written opinion would follow. This is that opinion. For the reasons stated below, the Court dismissed Plaintiff's sexual harass-

ment claim against Lopez, but allowed Plaintiff's IIED claim against Lopez to proceed.

## I. FACTUAL BACKGROUND

Plaintiff filed her Complaint on March 10, 2003, requesting relief for damages, attorney's fees and costs, exemplary and punitive damages, prejudgment interest, and other relief. [Doc. # 1 ¶¶ 1–7].

In support of Plaintiff's sexual harassment claim she alleges that Safeway and Lopez discriminated against her by subjecting her to sexual harassment in violation of Title VII. Plaintiff asserts that Lopez "used his position as a managerial supervisor at Safeway" to sexually harass and discriminate against her. [Id. ¶ 12.]. For example, Plaintiff alleges that Lopez "sought sexual favors ... [and] made numerous verbal remarks, sounds, gestures to Plaintiff such as (1) 'you smell so good I could almost taste you' (2) 'I bet you taste good' (3) 'I wish you would gain more weight because I like more meat on your butt.' " [Id.]. Also, Plaintiff alleges that Lopez "would frequently walk up behind her and while in close proximity would tell [her] that he wanted to rub up against her body." [Id.]. Plaintiff further alleges that because Safeway did not take any corrective measures to stop Lopez after female employees notified Safeway of the sexual harassment, Safeway is "culpable and guilty" of sexual harassment. [Id. ¶ 14.].

Additionally, Plaintiff contends that Safeway discriminated against her and subjected her to sexual harassment by creating a hostile work environment in violation of Title VII. Specifically, Plaintiff alleges that Safeway condoned the improper behavior and failed to discipline its employees, including Lopez, who engaged in activity that sexually harassed and discriminated against Plaintiff and other similarly-situated female Safeway employees. [Id. ¶¶ 23–24.]. Plaintiff further alleges that the "harassment, discrimination, and creation of a hostile work environment by Defendants was intentional and malicious." [Id. ¶ 33–34.]. Plaintiff contends that because of Safeway's and Lopez's "intentional and malicious conduct" she has "suffered humiliation, mental anguish and emotional and physical distress of mind and body in the form of fear, shock, anger, worry, humiliation, nervousness, irritability, insomnia, [and] loss of appetite." [Id. ¶ 34.].

Finally, Plaintiff alleges that Safeway was negligent for not taking appropriate measures to discipline Lopez and other Safeway employees after female employees had complained of sexual harassment discrimination. Plaintiff asserts that "Safeway breached its duty of care to the Plaintiff by failing to discipline or terminate Defendant Lopez, and failing to take any corrective measures [and] safeguards in order to protect female employees, including Plaintiff." [Id. ¶ 40.]. Plaintiff argues that her injuries are "a proximate result" of Safeway's actions. [Id. ¶ 42.].

In response to Plaintiff's sexual harassment claim, Lopez asserts that he should be dismissed from the suit because he is not an "employer" within the meaning of Title VII. [Doc. # 5]. Lopez argues that when Congress enacted Title VII, Congress limited liability to employers with 15 or more employers and precluded claims against individual employees. Moreover, Lopez contends that because he did not "employ[ ] [Plaintiff] in any capacity," he cannot be held liable under Title VII.[Id.]. Moreover, Lopez argues that since Plaintiff's Opposition to Defendant's Motion to Dismiss did not respond to Lopez's motion to dismiss the sexual harassment claim, Lopez's Motion should be granted and that claim against him should be dismissed under Local Rule 1.10(i).

In response to Plaintiff's claim of IIED, Lopez argues that Plaintiff's factual basis

for the claim does not demonstrate conduct that was sufficiently "extreme and outrageous" to support a claim of IIED under Arizona law. [Doc. # 5].

## II. PROCEDURAL HISTORY

As noted, Plaintiff filed her Complaint on March 10, 2003. [Doc. # 1]. On April 25, 2003, Safeway answered the Complaint (Doc. # 4) and on April 25, 2003 Lopez filled a Motion to Dismiss, requesting the Court to dismiss him from the suit. [Doc. # 5]. Plaintiff filed an Opposition on May 8, 2003 (Doc. # 7), and Defendant filed a Reply on May 19, 2003. [Doc. # 10].

## III. DISCUSSION

### A. Jurisdiction

Plaintiff's federal law claims fall within the scope of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). 42 U.S.C. § 2000e *et. seq.* The Court therefore has jurisdiction over Plaintiff's federal law claims under 28 U.S.C. § 1331 (federal question jurisdiction) and pendent jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1343.

### B. Legal Standards

#### 1. *Rule 12(b)(6) Motion to Dismiss*

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 Charles A. Wright & Arthur R.

Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)).

■ When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (citations omitted). The district court need not assume, however, that the plaintiff can prove facts different from those alleged in the complaint. *See Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

■ "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988); *see* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:187, at 9–46 (2002). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir.1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts."); *see also Federal Civil Procedure Before Trial* § 9:193, at 9–47.

#### 2. *Rule 8(a)*

■ Rule 8(a)(2) of the Federal Rules of Civil Procedure sets forth the procedur-

al requirements for pleading a claim in federal court. Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "mean[s] what it sa[ys]." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir. 1997). A claimant need not "set out in detail the facts upon which he bases his claim." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Rather, the complaint need only provide the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* Accordingly, in evaluating the sufficiency of a complaint, the court's role "is necessarily a limited one," confined to evaluating "not whether a plaintiff will ultimately prevail," but "whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), abrogated on other grounds, *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Indeed, although " 'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] ... that is not the test.' " *Gilligan,* 108 F.3d at 249 (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683).

"A plaintiff need not make a prima facie case showing to survive a motion to dismiss provided he otherwise sets forth a short and plain statement of his claim showing that he is entitled to relief." *Ortez v. Washington County,* 88 F.3d 804, 807 (9th Cir.1996). For example, in *Swierkiewicz v. Sorema, N.A,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Su-

preme Court reaffirmed the liberal pleading requirement under Rule 8. In *Swierkiewicz,* the Court addressed whether an employment discrimination complaint must contain specific facts establishing a prima facie case of discrimination under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court held that a complaint need not establish a prima facie case under *McDonnell Douglas,* but instead must comport with the "short and plain statement of the claim" requirement of Rule 8. In so holding, the Court stressed its own precedent and support for Rule 8's "simplified notice pleading" standard. *Id.* at 511–14, 122 S.Ct. 992. "This simplified notice pleading standard," the Court said, "relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* (relying on *Conley* and *Leatherman* ). "Thus, complaints ... must satisfy only the simple requirements of Rule 8(a)." *Id.* at 513, 122 S.Ct. 992.

## C. Defendant Lopez's Motion to Dismiss

Lopez asserts that the Court should dismiss Plaintiff's sexual harassment claim against him because he is not an "employer" under Title VII. Lopez further asserts that the Court should dismiss Plaintiff's sexual harassment claim pursuant to Local Rule 1.10(i) because in Plaintiff's Response to Lopez's Motion to Dismiss, she failed to respond to Lopez's argument that her Title VII claim against him should be dismissed. Lopez further asserts that the Court should dismiss Plaintiff's claim for IIED because his conduct did not constitute "extreme and outrageous conduct" under Arizona law.

### 1. Plaintiff's sexual harassment claim against Lopez

"Title VII prohibits employment discrimination on account of race, sex, reli-

gion, and national origin." *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30,* 694 F.2d 531, 536 (9th Cir.1982) (citing 42 U.S.C. § 2000e–2(a)). Specifically, Title VII provides, in pertinent part: "It shall be an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

■ Title VII only applies to employers, not employees. *Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993). "The statutory scheme itself indicates that Congress did not intend to impose individual liability on employees." *Id.* "Title VII limits liability to employers with fifteen or more employees ... because Congress did not want to burden small entities with the costs associated with litigating discrimination claims." *Id.* "If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees." *Id.* The *Miller* court further outlined a policy reason supporting Title VII's exclusion of individual employees from liability. The court explained that "[n]o employer will allow supervisory or other personnel to violate Title VII when the employer is liable for the Title VII violation." *Miller,* 991 at 558. The court went to state "[a]n employer that has incurred civil damages because one of its employees believes he can violate Title VII with impunity will quickly correct that employee's erroneous belief." *Id.*

■ Additionally, an employee that is a supervisor cannot be held liable under Title VII. *Pink v. Modoc Indian Health Project, Inc.,* 157 F.3d 1185, 1189 (9th Cir. 1998) ("[C]ivil liability for employment discrimination does not extend to individual agents of the employer who committed the violations, even if that agent is a supervisory employee); *see also Greenlaw v. Garrett,* 59 F.3d 994, 1001 (9th Cir.1995) ("Under Title VII there is no personal liability for employees, including supervisors").

■ The Court will dismiss Plaintiff's sexual harassment claim against Lopez because Lopez is not an employer under Title VII. Here, the Plaintiff concedes that Lopez is Plaintiff's supervisor and Lopez is a Safeway employee. Since Lopez is an employee supervisor at Safeway he cannot be an employer as defined under Title VII.

### 2. *Local Rule 1.10(i)*

Lopez also argues that the Court may summarily dismiss Plaintiff's claim of sexual harassment against him pursuant to Rule 1.10(i), Rules of Practice of the United States District Court for the District of Arizona ("Local Rules"), because her Response contained no argument or evidence concerning that claim. [Doc. # 10]. As noted above, because Title VII does not impose individual liability on employees, Plaintiff's claim of sexual harassment pursuant to Title VII against Lopez will be dismissed as a matter of law. Accordingly, the Court need not address Lopez's argument that the claim should be dismissed pursuant to Local Rule 1.10(i). The Court notes, however, that the absence of any discussion or argument by Plaintiff in her Response regarding Lopez's liability for sexual harassment may be attributable to her counsel's recognition that the law does not support the Title VII harassment claim against Lopez. In light of the requirement of Rule 11(b)(2), Federal Rules of Civil Procedure that a pleading must be "warranted by existing law," Lopez's counsel may purposefully have omitted any argument on that claim after realizing the claim was not supported by law.

### 3. Intentional Infliction of Emotional Distress

#### a. Federal law of notice pleading applies

■ In diversity actions such as this, federal rules of civil procedure govern. "[I]f there is a federal rule of procedure covering a particular point of practice or pleading in dispute, such rule governs in a federal diversity action even if resort to state law would lead to a different result." *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 740 (9th Cir.1982) (citing *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)). Lopez has asked the Court to dismiss Plaintiff's IIED claim pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, claiming that the allegations of the Complaint fail to meet the "high" standard of conduct required to support her IIED claim under Arizona law. [Doc. # 5, p. 5]. As noted, the sufficiency of Plaintiff's pleadings is governed by Rule 8, Federal Rules of Civil Procedure, which requires that Plaintiff have offered only "a short and plain statement of the claim showing that [she] is entitled to relief." [1]

#### b. Elements of the tort of IIED under Arizona law

■ Arizona courts have set forth the elements for the tort of IIED relying on the language of the Restatement (Second) of Torts. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 44, 734 P.2d 580, 586 (Ariz.1987) (citing *Savage v. Boies*, 77 Ariz. 355, 272 P.2d 349 (1954)). "The elements of a cause of action for intentional infliction of emotional distress are: [1] the conduct of the defendant must be extreme and outrageous; [2] the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct; and [3] severe emotional distress must indeed occur as a result of defendant's conduct." *Johnson v. McDonald*, 197 Ariz. 155, 160, 3 P.3d 1075, 1080 (1995) (citing *Ford*, 153 Ariz. at 43, 734 P.2d at 585). Arizona follows the definition of the "extreme and outrageous conduct" element provided in the Restatement (Second) of Torts § 46 (comment d):

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

*See Lucchesi v. Stimmell*, 149 Ariz. 76, 78, 716 P.2d 1013, 1016 (1986); *Cluff v. Farmers Ins. Exch.*, 10 Ariz.App. 560, 562, 460 P.2d 666, 668 (1969).

■ Because the terms "outrageous conduct" and "severe emotional distress" evade precise legal definition, a case-by-case analysis is necessary. *Lucchesi v. Stimmell*, 149 Ariz. at 79, 716 P.2d at 1016. One factor used by courts to analyze these terms is the "position occupied by the defendant." *Id.* (citing Restatement (Second) of Torts § 46 comment e). Comment e provides that "the extreme and outrageous character of conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."

#### c. Plaintiff's allegations of IIED based on Lopez's conduct

Plaintiff alleges that Lopez's unwanted sexual overtures and actions occurred "re-

---

1. There is no conflict between Rule 8, Fed. R.Civ.P. and the complementary Arizona rule of procedure, Rule 8, Ariz. R. Civ. P. In fact, these rules are "identical." *Anserv Ins. Servs., Inc. v. Albrecht*, 192 Ariz. 48, 49, 960 P.2d 1159, 1160 (1998).

peatedly" and "continuously" between July 2001 and February 2002. As noted, Plaintiff alleges that Lopez made verbal remarks to her such as "I bet you taste good," and "I wish you would gain more weight because I like more meat on your butt," would caress Plaintiff's hands "in a sexual manner," and would walk up behind her and in close proximity tell Plaintiff he wanted to rub up against her body. [Compl. ¶ 12]. Additionally, Plaintiff alleges that female Safeway employees complained to the store manager about Lopez's behavior and that he did not take any action to protect female employees against Lopez. Plaintiff alleges she suffered "humiliation, mental anguish and emotional and physical distress of mind and body in the form of fear, shock, anger, worry, humiliation, nervousness, irritability, insomnia, [and] loss of appetite." [*Id.* ¶ 34].

Lopez argues that Plaintiff's allegations of sexual harassment are "simply insufficient to rise to the level of 'extreme and outrageous conduct' under Arizona law" (Doc. # 5, p. 7), and "fall short of the high threshold that Arizona courts have justifiably set for intentional infliction claims" (Doc. # 10, p. 6). To support this argument, Plaintiff cites to a number of opinions by Arizona state courts or by federal courts interpreting Arizona law, which address claims of IIED. As the following discussion explains, the cases cited by Lopez do not resolve Plaintiff's claims because the cases are all distinguishable on the facts and, with a single exception, the cases were not decided at the pleading stage, but rather on motions for summary judgment or a procedural equivalent.

■ Moreover, to the extent that Lopez argues that a plaintiff alleging an IIED claim under Arizona law is held to a higher pleading standard than that required by Rule 8, neither Plaintiff's pleadings nor case law support such an argument. As the Supreme Court observed in *Swierkiewicz*, "Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." [2] 534 U.S. at 513, 122 S.Ct. 992. For example, the *Swierkiewicz* Court held that an employment discrimination plaintiff need not plead a prima facie case of discrimination in his complaint to survive a motion to dismiss. *Id.* at 515, 122 S.Ct. 992. That principle is equally applicable to Plaintiff's IIED claim.

■ Plaintiff's Complaint satisfies the liberal notice pleading requirements of Federal Rule of Civil Procedure 8(a). For example, Plaintiff's Complaint alleges that the "harassment, discrimination and creation of a hostile work environment by [Lopez] was intentional and malicious and done for the purpose of causing Plaintiff to suffer humiliation, mental anguish and emotional and physical distress." [*Id.* ¶ 33]. Furthermore, Plaintiff alleges that Lopez's actions were taken "with a wanton and reckless disregard of the consequences to [her]" and caused her to suffer in the "form of fear, shock, anger, worry, humiliation, nervousness, irritability, insomnia, [and] loss of appetite." [*Id.* ¶ 34]. She also states that Lopez's actions caused her to take "stress leave" and ultimately quit her job. [*Id.*, ¶ 8]. Plaintiff's allegations are fortified by particularized descriptions of the alleged conduct.

### d. Lopez's argument that Plaintiff has failed to state a claim of IIED.

Lopez relies heavily on *Mintz v. Bell Atlantic Systems Leasing International, Inc.*, 183 Ariz. 550, 554, 905 P.2d 559, 563 (1995), the only case he cited that was

---

2. Such exceptions involve, for example, averments of fraud or mistake, as is set forth in Rule 9(b), Fed.R.Civ.P.

decided on a motion to dismiss. In *Mintz*, the plaintiff's claims included IIED, gender discrimination and retaliation. The plaintiff was hospitalized with severe emotional and psychological problems after failing to receive a promotion she expected, and her employer ordered her back to work prior to her doctor's recommended return date. 183 Ariz. at 552, 905 P.2d at 561. The plaintiff lasted only one day at work before landing back in the hospital suffering from stress. *Id.* The day after the plaintiff was admitted, her employer delivered a letter to her in the hospital advising her that her duties had been reassigned. *Id.* The trial court granted the defendant employer's motion to dismiss the plaintiff's IIED claim.

The court of appeals quoted the plaintiff's allegation of IIED from her complaint, in which the plaintiff complained that her employer "forc[ed] her to return to work, and hand deliver[ed] a letter to her while in the hospital," actions the plaintiff argued were "extreme and outrageous and calculated to cause [her] severe emotional distress . . . ." *Id.* at 554, 905 P.2d at 563. Upholding the trial court's granting of the employer's motion to dismiss, a majority opinion of the court of appeals held that the facts alleged did not rise to the extreme level of outrageousness necessary to state a claim for IIED, stating "[t]he trial court has to draw a line, and we find no error in where the line was drawn on the facts alleged here." *Id.* at 555, 905 P.2d at 564. The court of appeals found relevant the employer's awareness of the plaintiff's susceptibility to emotional problems, but also the employer's legitimate business purpose in "seeing that [the plaintiff's] work was done, either by her or by someone else." *Id.* at 554, 905 P.2d at 563.

The *Mintz* court cited the Third Circuit Court of Appeals case of *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.

1988) to "illustrate just how outrageous alleged conduct must be to state a claim for [IIED] in the employment context." *Id.* at 555, 905 P.2d at 564. *Cox*, however, was decided at the summary judgment stage (motion for directed verdict) relying on substantive Pennsylvania law holding that it was "extremely rare" to find sufficiently outrageous conduct in the employment context (citing to Pennsylvania cases involving employee dismissals). It is clear the court decided the summary judgment on federal procedural law applied to Pennsylvania state law concerning a claim of IIED.

The majority *Mintz* opinion included a partial dissent authored by Judge Lankford. Judge Lankford dissented from the court's decision on the plaintiff's IIED claim, and emphasized that the appeal was from a dismissal, which he first noted is not favored under Arizona law. 183 Ariz. at 556, 905 P.2d at 565. Assuming the plaintiff's allegations as true, Judge Lankford concluded that the defendant's conduct was sufficiently outrageous to maintain a claim for IIED. He noted particularly that the defendant knew of the plaintiff's vulnerability, that the letter delivered to the plaintiff in the hospital was sent for no apparent reason, and that because the plaintiff was an employee of the defendant, this relationship made the defendant's conduct more outrageous. *Id.* at 557–58, 905 P.2d at 566–67 (citing the Restatement (2d) of Torts § 46, cmt. e).

The Court encounters little difficulty distinguishing. *Mintz* on its facts. In *Mintz*, the defendants' alleged actions included an instance in which her employer required her to return to work before she was emotionally and psychologically ready and then delivered a letter to her in the hospital advising her that her job duties were being reassigned, knowing that she was suffering from emotional distress.

Here, Plaintiff alleges she was continuously subjected to unwanted sexual harassment over an eight-month period. Plaintiff alleged that over this prolonged period, Lopez subjected her to repeated verbal and physical harassment that was aggressive and extremely offensive. Plaintiff contends that she suffered physical and emotional distress to a degree that she ultimately was compelled to go on stress leave and subsequently to quit her job. [Doc. # 1 ¶ 25].

Lopez relies on two other Arizona state court opinions in which a plaintiff's claim of IIED was at issue, *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 888 P.2d 1375 (1994) and *Cummins v. Mold–In Graphics Systems*, 200 Ariz. 335, 26 P.2d 518 (2001), depublished, 201 Ariz. 474, 38 P.3d 12 (2002), to demonstrate the difficulty in establishing an IIED claim in the employment context. Each case, however, was decided at the summary judgment stage, where discovery was complete and the courts' obligation was to determine if there were genuine issues of material fact.

Similarly, Lopez cites in support of his argument three District of Arizona cases in which the court rejected IIED claims involving allegations of extreme and outrageous discriminatory conduct at the summary judgment stage: *Spratt v. Northern Automotive Corp.*, 958 F.Supp. 456, 461 (D.Ariz.1996), *Tempesta v. Motorola, Inc.*, 92 F.Supp.2d 973, 986–87 (D.Ariz.1999), and *Stingley v. Arizona*, 796 F.Supp. 424, 430–31 (D.Ariz.1992). Because each case was decided on summary judgment, this trilogy has little application here.

e. *Ford v. Revlon, Inc.*, 153 Ariz. 38, 734 P.2d 580 (1987)

Unlike the facts of case law relied on by Lopez, Plaintiff's allegations concern ongoing incidents of sexual harassment. In *Ford v. Revlon*, 153 Ariz. 38, 734 P.2d 580 (Ariz.1987), which Lopez did not discuss, the Arizona Supreme Court addressed facts that are much more analogous to Plaintiff's claims than those in *Mintz*. Whether the facts here meet the mark of establishing the IIED claim can only be resolved after completion of the depth and breadth of discovery necessary to finally analyze the claim.

In *Ford v. Revlon*, the plaintiff alleged that her supervisor made improper sexual advances at a business dinner, the next month told her in front of her friends at a Revlon company picnic that he wanted to "fuck" her and would "fuck" her if it took him ten years, and later that day physically accosted her in an aggressively sexual manner, repeating that he wanted to, and would, "fuck" her. 153 Ariz. at 39–40, 734 P.2d at 581–82. Of great significance, the plaintiff's claims were not decided by dispositive motion, but before a jury after the trial court found genuine issues of material fact. The jury found the plaintiff's supervisor liable for assault and battery, but not liable for IIED, and found Revlon liable for IIED, but not liable for the assault and battery. *Id.* at 42, 734 P.2d at 584. The issue before the Arizona Supreme Court did not involve the plaintiff's claims of IIED against her supervisor, but rather was whether the employer, Revlon, could be liable for IIED for the way it handled the plaintiff's complaints of her supervisor's sexual harassment. The Court held that "Revlon's reckless disregard of [the supervisor's] conduct made it nearly certain that such emotional distress would ... occur." Revlon knew that [the supervisor] had subjected [the plaintiff] to "physical assaults, vulgar remarks, that [the plaintiff] continued to feel threatened by [her supervisor], and that [the plaintiff] was emotionally distraught, all of which led to a manifestation of physical problems." *Id.* at 43, 734 P.2d at 585. The court's holding, while addressed to Revlon's handling of Plaintiff's complaints about her supervi-

sor's conduct, is at least strongly suggestive that the supervisor's actions could be viewed as supporting a claim of IIED against the supervisor.

*f. No law directly on point*

The parties have not cited, and the Court on its own has not located, Arizona or federal opinions deciding whether a plaintiff's allegations supporting a claim of IIED against her supervisor arising from the supervisor's sexually harassing conduct may survive a motion to dismiss. The opinions of the Arizona Court of Appeals in *Mintz, Nelson,* and *Cummins* are not dispositive of Plaintiff's claims. None of these cases involved allegations of IIED based on allegations of sexual harassment, let alone allegations of repeated instances of sexual harassment.

Again, while the Court offers no comment regarding Plaintiff's chances for success on her claim either by trial or by dispositive motion, it concludes that the Complaint alleges facts sufficient to support her claim of IIED. The Court notes in particular that Lopez was Plaintiff's supervisor and Plaintiff's allegations that the sexual harassment was nearly continuous for a period of many months. Further, the alleged harassment involved extremely vulgar comments and repugnant physical acts toward Plaintiff by Lopez that, while arguably not as extreme as those alleged in *Ford v. Revlon,* are of the same character provoking one "to exclaim 'Outrageous.'" Restatement (Second) of Torts § 46 (comment d).

The Court finds that Plaintiff's allegations in her Complaint have met the pleading requirements of Rules 8(a) and 12(b)(6). Lopez's Motion to Dismiss Plaintiff's intentional infliction of emotional distress claim against him has been denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Lopez's Motion to Dismiss (Doc. # 5) is **GRANTED IN PART** as to Plaintiff's sexual harassment discrimination claim against Lopez.

**IT IS FURTHER ORDERED** that Lopez's Motion to Dismiss (Doc. # 5) is **DENIED IN PART** as to Plaintiff's claim of intentional infliction of emotional distress against Defendant Lopez.