NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NINA TERTEROVA, *Plaintiff/Appellant*,

*v.*

NICHOLAS ALAN BYOUS and SHARI L. NESTOR, *Defendants/Appellees*.

No. 1 CA-CV 13-0286
FILED 4-3-2014

Appeal from the Superior Court in Maricopa County
No. CV2013-090277
The Honorable Douglas L. Rayes, Judge

**AFFIRMED**

COUNSEL

Nina Terterova, Phoenix
*Plaintiff/Appellant*

Nicholas Alan Byous; Shari L. Nestor, Scottsdale
*Defendants/Appellees*

**MEMORANDUM DECISION**

Judge Peter B. Swann delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Jon W. Thompson joined.

**S W A N N**, Judge:

¶1          Nina Terterova appeals from the trial court's dismissal of her claim for damages against Nicholas Alan Byous and Shari L. Nestor (collectively, "Defendants"). We affirm because Terterova's complaint fails to state a claim as a matter of law.

## FACTS AND PROCEDURAL HISTORY

¶2          Terterova filed a complaint against Defendants alleging the following facts. On the evening of August 23, 2012, Terterova picked up Byous in her car and drove them to a bar. Byous told Terterova that they could receive free drinks at the bar because he knew the bartender. They "began drinking heavily" upon arriving, and Terterova, by her own estimate, "consumed approximately 12 or more shots of [v]odka" over the next three-and-a-half hours. In the early morning of August 24, Byous insisted that they return to "his place" and invited Terterova to "spend the night." He drove them back to his residence in Terterova's car, where they both smoked marijuana that he provided. Byous thereafter initiated sexual relations with Terterova, but his mother, Nestor, soon interrupted and screamed at him to make Terterova leave. Byous and Terterova left what was in fact Nestor's home, and drove away in Terterova's car with Terterova behind the wheel. Police stopped the car nearby and charged Terterova with "super extreme DUI," at which point her blood alcohol level measured more than three times the legal limit. Byous was released from the scene without charges.

¶3          On these facts, Terterova sued Defendants for negligence and intentional infliction of emotional distress. She alleged that (1) Byous owed a duty to protect her because they had established a relationship by seeing each other on numerous earlier occasions; and (2) Byous had breached that duty by "placing her in a precarious situation" when he "lied to her about [Nestor's home] being his Residence and . . . claim[ed] she 'could spend the night' when he knew or, at the very least should have known that . . . Nestor in fact owned the residence and was the ultimate decision maker." Terterova further alleged that Nestor, whom

she had never met before, had acted with reckless and wanton disregard for Terterova's safety by demanding that Terterova leave her home when Nestor knew or should have known that it would cause either Terterova or Byous to drive while intoxicated. According to Terterova, Defendants were at fault for causing her to "suffer numerous damages, including Fines, Felony Convictions, Community Service, [and] Probation." In addition, Terterova asserted that Defendants' actions were "considered outrageous in a civilized society" and caused her severe emotional distress for which she required anxiety and depression medication.

¶4 Defendants moved to dismiss Terterova's complaint for failure to state a claim. They argued, *inter alia*, that neither of them owed a duty to Terterova under the alleged facts, that she was entirely responsible for causing the asserted damages and that her alleged emotional distress was neither "severe" nor "extreme and outrageous." The court granted Defendants' motion to dismiss, reasoning that Defendants owed no duty to Terterova because she had become intoxicated voluntarily. Terterova timely appeals.

**DISCUSSION**

¶5 Terterova contends that the trial court erred by dismissing her complaint because the alleged facts supported her claims for negligence and intentional infliction of emotional distress.[1] We disagree.

¶6 A complaint must set forth a short, plain statement "showing that the pleader is entitled to relief." Ariz. R. Civ. P. 8(a)(2). This requires the plaintiff to plead facts sufficient to support the claim. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 419, ¶ 7, 189 P.3d 344, 346 (2008). In reviewing the dismissal of a complaint for failure to state a claim, we accept as true the facts alleged in the complaint and will affirm the dismissal only if the plaintiff would not be entitled to relief under any interpretation of the facts susceptible of proof. *Fidelity Sec. Life Ins. Co. v. State*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998). We resolve all reasonable inferences from those facts in favor of the plaintiff, *McDonald v. City of Prescott*, 197 Ariz. 566, 567, ¶ 5, 5 P.3d 900, 901 (App. 2000), but

---

[1] Terterova raises several additional theories of liability on appeal. Because she did not mention them in her complaint, we decline to address them. *Dillig v. Fisher*, 142 Ariz. 47, 51, 688 P.2d 693, 697 (App. 1984) ("[A]ppellants did not raise [an] argument before the trial court and therefore cannot raise it for the first time on appeal.").

consider only the facts alleged, *Don Kelland Materials, Inc. v. Langel*, 114 Ariz. 374, 375, 560 P.2d 1281, 1282 (App. 1977), and do not accept legal conclusions presented without supporting factual allegations as sufficient to establish a claim upon which relief can be granted, *Cullen*, 218 Ariz. at 419, ¶ 7, 189 P.3d at 346.

¶7        To state a claim for negligence, a plaintiff must show, among other elements, that the defendant owed the plaintiff "a duty requiring the defendant to conform to a certain standard of care" in order to "protect [the plaintiff] against unreasonable risks of harm." *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶¶ 9-10, 150 P.3d 228, 230 (2007) (citation omitted). The issue of duty is a matter of law, *id.* at ¶ 9, and the plaintiff must allege facts sufficient to give rise to a duty before a negligence claim can proceed, *see id.* at ¶ 11 ("Whether the defendant owes the plaintiff a duty of care is a threshold issue; absent some duty, an action for negligence cannot be maintained.").

¶8        In its order dismissing Terterova's complaint, the trial court focused on the voluntariness of Terterova's intoxication. But voluntary *intoxication* alone does not negate the existence of a duty. *Id.* at 147, ¶ 31, 150 P.3d at 234. In *Gipson,* the defendant argued for the adoption of "a no-duty rule precluding recovery on the grounds that a person who voluntarily becomes intoxicated and thereby sustains an injury should not be able to recover from the person supplying the intoxicants." *Id.* Our supreme court specifically "reject[ed] this reasoning," explaining that "[plaintiff's] own actions may reduce recovery under comparative fault principles or preclude recovery if deemed a superseding cause of the harm, but those are determinations to be made by the factfinder." *Id.* The proper focus was therefore not on whether Terterova voluntarily became intoxicated, but rather on whether she voluntarily violated a criminal law. However, because "[w]e may affirm on any basis supported by the record," *State v. Robinson*, 153 Ariz. 191, 199, 735 Ariz. 801, 809 (1987), we conclude that the court correctly dismissed Terterova's negligence claim because Defendants did not owe her a duty to save her from her own criminal conduct.

¶9        Whether a duty exists depends on the relationship between the parties and public policy considerations. A duty is not created by the mere foreseeability that the defendant's actions could cause the plaintiff harm. *Koss Corp. v. Am. Express Co.*, 233 Ariz. 74, 92, ¶ 62, 309 P.3d 898, 916 (App. 2013). "While no special or direct relationship is required, duties of care based on relationship can be based on contract, family relationships or conduct undertaken by the defendant." *Id.* "Public policy

creating a duty can arise from a statute prohibiting conduct if the statute is designed to protect the class of persons in which the plaintiff is included against the risk of the type of harm which in fact occurs as a result of the violation." *Id.*

¶10 Here, Terterova did not have a familial or contractual relationship with Defendants that could create a duty. As a matter of law, we decline to hold that the casual dating relationship she alleges is sufficient to create a legal duty. And Defendants' mere knowledge of Terterova's intoxication did not create a relationship that could give rise to a duty. *See* Restatement (Second) of Torts § 314 (1965) ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."); *see also Danos v. St. Pierre,* 383 So. 2d 1019, 1022 (La. Ct. App. 1980) ("Mere knowledge or awareness of the intoxicated condition of the driver, alone, does not create a relationship which imposes a duty upon a guest passenger . . . ."), *aff'd*, 402 So. 2d 633 (La. 1981); *Olson v. Ische*, 343 N.W.2d 284, 287 (Minn. 1984) ("[T]o impose a legal duty on the passenger, which makes him liable to others on the highway for what the driver himself chooses to do, seems to us, as a general proposition, inappropriate. Such a rule assumes, incorrectly, that a passenger somehow shares in the management of the motor vehicle, and it further assumes the driver is amenable to the passenger's influence."); *Cole v. City of Spring Lake Park*, 314 N.W.2d 836, 840 (Minn. 1982) (holding that refusing an intoxicated guest's request to remain in one's home was insufficient to support negligence action).

¶11 Moreover, we can conceive of no public policy consideration that would create a duty under these circumstances. To the contrary, we hold that Terterova's voluntary decision to drive her own car while intoxicated bars her from asserting that Defendants had a duty to shield her from the resulting criminal penalties. *See Holt v. Navarro*, 932 A.2d 915, 920, ¶ 14 (Pa. Super. Ct. 2007) ("The common law principle that a person should not be permitted to benefit by his own wrongdoing, particularly his own crimes, prevents a plaintiff from recovering losses which flowed from those criminal acts."); Francis Bowes Sayre, *Criminal Responsibility for the Acts of Another*, 43 Harv. L. Rev. 689, 717 (1930) ("[I]t is of the very essence of our deep-rooted notions of criminal liability that guilt be personal and individual . . . ."). It would be a gross distortion of the purposes of the criminal law to allow a convicted defendant to enlist the assistance of the courts to shift her responsibility for criminal penalties to others. The penalties Terterova endured were imposed upon her by the

state as a punishment for her own voluntary criminal conduct -- she was forced neither to drink nor to drive.

¶12　　　　The court also properly dismissed Terterova's complaint for intentional infliction of emotional distress. To recover on a claim for intentional infliction of emotional distress, a plaintiff must prove, among other elements, that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Cluff v. Farmers Ins. Exch.*, 10 Ariz. App. 560, 562, 460 P.2d 666, 668 (1969) (quoting Restatement (Second) of Torts § 46 cmt. d), *overruled on other grounds by Godbehere v. Phx. Newspapers, Inc.*, 162 Ariz. 335, 783 P.2d 781 (1989). Whether an act is sufficiently extreme and outrageous for this purpose is a matter of law to be determined initially by the court. *Lucchesi v. Frederic N. Stimmell, M.D., Ltd.*, 149 Ariz. 76, 79, 716 P.2d 1013, 1016 (1986) (quoting Restatement (Second) of Torts § 46 cmt. h); *see also Patton v. First Fed. Sav. & Loan Ass'n of Phx.*, 118 Ariz. 473, 476, 578 P.2d 152, 155 (1978) ("It is the duty of the court as society's conscience to determine whether the acts complained of can be considered sufficiently extreme and outrageous to state a claim for relief."). In this case, viewing the facts in the light most favorable to Terterova, Byous employed less than honest methods in an attempt to seduce her, and Nestor was inhospitable when she ejected a stranger from her home. In a perfect world, such conduct might not occur. But we cannot say that the alleged conduct of either defendant can be "regarded as atrocious and utterly intolerable in a civilized community." *See Cluff*, 10 Ariz. App. at 562, 460 P.2d at 668. Any other holding would amount to a dramatic expansion of a tort that has historically been reserved for only the most extreme forms of malice.

¶13　　　　Finally, Terterova contends that the court abused its discretion by dismissing her complaint without allowing her an opportunity to present evidence. This argument misconceives the procedure governing motions to dismiss. *See Coleman v. City of Mesa*, 230 Ariz. 352, 363, ¶ 46, 284 P.3d 863, 874 (2012) ("In adjudicating a Rule 12(b)(6) motion to dismiss, however, a court does not resolve factual disputes between the parties on an undeveloped record. Instead, the issue is whether the pleading states a sufficient claim to warrant allowing the [plaintiffs] to attempt to prove [their] case."); *Cullen*, 218 Ariz. at 419, ¶ 7, 189 P.3d at 346 ("When adjudicating a Rule 12(b)(6) motion to dismiss, Arizona courts look only to the pleading itself . . . .").

**CONCLUSION**

**¶14**        For the foregoing reasons, we affirm.

**¶15**        Defendants request that we "enter an order awarding sanctions against [Terterova] and require her to pay the reasonable attorneys fees and costs incurred by [Defendants] in connection with this baseless and frivolous lawsuit."   Under ARCAP 25, we may award attorney's fees and other "reasonable penalties or damages" when the appeal is "frivolous."   The determination to award or decline sanctions under ARCAP 25 is within this court's discretion, *Ariz. Dep't of Revenue v. Gen. Motors Acceptance Corp.,* 188 Ariz. 441, 446, 937 P.2d 363, 368 (App. 1996), and we impose ARCAP 25 sanctions with "great reservation," *Ariz. Tax Research Ass'n v. Dep't of Revenue,* 163 Ariz. 255, 258, 787 P.2d 1051, 1054 (1989).   Although we conclude that Terterova's arguments were meritless, the record does not establish frivolousness, intentional delay, or an improper motive.  *See Hoffman v. Greenberg,* 159 Ariz. 377, 380, 767 P.2d 725, 728 (App. 1988) ("The line between an appeal which has no merit and one which is frivolous is very fine, and we exercise our power to punish sparingly.").   We therefore decline to award sanctions.  As the prevailing parties, Defendants are entitled to an award of costs under A.R.S. § 12-341 upon their compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
F I L E D : MJT