**Amanda SPRATT, Plaintiff,**

v.

**NORTHERN AUTOMOTIVE CORP.,
et al., Defendants.**

**No. Civil 95–381 TUC RMB.**

United States District Court,
D. Arizona.

June 21, 1996.

---

Teresa D. Forst, John Alan Doran, Kandace B. Sheya, Bryan Cave LLP, Phoenix, AZ, for Defendants.

Carol S. Korhonen, Tucson, AZ, for Plaintiff.

## MEMORANDUM ORDER

BILBY, District Judge.

The Plaintiff has alleged six state law claims and one federal claim relating to her employment and eventual termination. The Defendants move for summary judgment on all but the federal claim, and seek dismissal of Plaintiff's request for punitive damages. Discovery is closed and the deadline for dispositive motions has now passed. The Court herein grants the Defendants' motions for summary judgement.

## BACKGROUND

Plaintiff Amanda Spratt was employed by Defendant Northern Automotive Corp. (NAC) for eleven years and eventually became a store manager. She had no problems with her employment until November 1993, when Sal Meza became her district manager. That same month, the Plaintiff, being seven and a half months pregnant, requested maternity leave. While she was on leave, Meza reviewed the Plaintiff's work performance. Meza and an NAC human resources manager met with the Plaintiff and placed her on an action plan. The action detailed performance goals and explained that failure to meet the goals could result in termination.

A week later Plaintiff requested that she be demoted two levels, from store manager to assistant manager. The Defendants granted her request, demoting her and reducing her salary. Eight months later, the Plaintiff was placed on suspension. She was accused of theft, of failure to follow company policy regarding the exchange of merchandise, and of failure to report a co-worker's falsification of a time card. The next day she was fired. The Plaintiff submits that those were not the real reasons for her termination. Rather, she insists, those reasons are merely a pretext to discrimination, harassment and retaliation. She alleges that Meza was hostile to her because she was a woman and was pregnant, and headed a smear campaign to get her fired.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The moving party has the burden of showing that there is no genuine issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the moving party meets this Rule 56 burden, the burden shifts to the resisting party, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The resisting party cannot "rest on mere allegations or denials of his pleadings." *Id.* Rather, it must demonstrate the presence of factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

Summary judgment is not precluded simply because there remain some factual dis-

putes. To defeat a motion for summary judgment, the resisting party must present facts in support of the issues on which it would bear the burden of proof at trial, there must be probative evidence of those facts, and the facts must be uncontroverted or at least create a genuine issue of material fact. *Id.* at 249–50, 106 S.Ct. at 2510–11. The moving party is entitled to judgment as a matter of law if the resisting party fails to make a sufficient showing of an element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54. When "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

## II. Count One: Breach of Contract

In Count One of the First Amended Complaint, Plaintiff alleges that she was promised the right to continued employment absent good cause for firing. The promises and representations regarding her continued employment, the Plaintiff claims, are part of her employment contract with NAC. She alleges that her demotion and eventual termination were a breach of the employment contract and were in retaliation for her complaints about misconduct. The misconduct includes forced demotion, sex discrimination, retaliation, hostile work environment, false claims and violations of company policies regarding pregnancy leave and overtime wages.

The Defendants dispute that any promises or representations were made regarding continued employment. The NAC employment manual specifically states the contrary. It provides that all employees are terminable at will, with or without cause. The manual states that it does not constitute a contract of employment. Therefore, the Defendants conclude, they were free to discharge the Plaintiff. She had no contractual right to continued employment.

■ Whether a particular personnel manual modifies an at-will relationship is a question of fact. *Leikvold v. Valley View Community Hosp.,* 141 Ariz. 544, 688 P.2d 170, 174 (1984). The Plaintiff claims that her training, representations made to her, and understanding of the manual modified their at-will arrangement. While this may be true, it will not carry the day.

■ Determining that the Plaintiff had a contractual right to continued employment absent good cause for her termination is but the first step. For a breach to have occurred, the Defendants must have violated the modified contract created by the employment manual. That is, the personnel manual may give rise to a contractual duty, but there is no cause of action without a breach of the contractual obligation.

■ The parties agreed at oral argument that this case essentially boils down to one of discrimination. If the Defendants did not discriminate against the Plaintiff, they have not breached any contract which is, for this purpose, assumed between them. Breach is an essential element of this cause of action and its proof is the burden of the Plaintiff. As more fully explained below in part V, the Plaintiff has failed to present sufficient evidence of this element, of which she bears the burden of proof at trial. She relies on conclusory, factually unsupported allegations that Meza discriminated against her and retaliated when she complained. She has not presented admissible evidence sufficient to allow this claim to proceed to trial. The Defendants are entitled to judgment as a matter of law as to Count One.

## III. Count Two: Breach of Contract (Failure to Supervise)

Plaintiff alleges in Count Two that NAC's failure to properly supervise Sal Meza is a breach of her employment contract. The poor supervision of Meza violated NAC's own policies and was known to have created a risk of harm to the Plaintiff.

The Defendants assert that there is no evidence that the Plaintiff was contractually promised that Meza would be carefully supervised. The Plaintiff responds that NAC had clear forewarning that Meza had created a hostile work environment for women.

■ Even if the Plaintiff is correct in that NAC knew of Meza's alleged bad conduct, she has not provided any evidence that she had a contractual right obligating NAC to supervise Meza in any particular way so as to avoid or eliminate a hostile environment. Further, Arizona does not presently recognize a contract claim for failure to supervise. This sounds more in negligence and is probably foreclosed as a tort claim under *Mintz v. Bell Atlantic Sys. Leasing Int'l,* 183 Ariz. 550, 905 P.2d 559 (App.1995) (limiting employment action tort claims to wrongful discharge). The Defendants are entitled to judgment as a matter of law on this claim because no Arizona law supports it and because the Plaintiff has not met her burden of coming forward with probative evidence creating a material issue of fact.

### IV. Count Three: Intentional Infliction of Emotional Distress

In Count Three, the Plaintiff alleges that the Defendants' conduct constitutes intentional infliction of emotional distress. The Defendants point out that Arizona has established extremely stringent standards for evaluating this type of claim at the summary judgment stage, and argue that Plaintiff has not met the standard. The Defendants are correct.

■ Intentional infliction of emotional distress consists of three elements. The conduct (1) must be extreme and outrageous; (2) must be causally connected to the emotional distress, and (3) the emotional distress must be severe. *Venerias v. Johnson,* 127 Ariz. 496, 622 P.2d 55, 58 (App.1980). *See also Ford v. Revlon, Inc.,* 153 Ariz. 38, 734 P.2d 580, 585 (1987) (requiring intent or reckless disregard). It is the duty of the court to determine whether the evidence could allow a finding of severe emotional distress. *Venerias,* 622 P.2d at 59. The court must also determine whether the conduct complained of can be considered extreme and outrageous. *Patton v. First Fed. Sav. & Loan Ass'n,* 118 Ariz. 473, 578 P.2d 152, 155 (1978); *Cluff v.. Farmers Ins. Exchange,* 10 Ariz. App. 560, 460 P.2d 666, 668 (1969). As such, this Court is called upon to determine the sufficiency of the case. *Davis v. First Nat'l Bank of Ariz.,* 124 Ariz. 458, 605 P.2d 37 (App.1979). Only when reasonable minds could differ does the issue go to the jury. *Lucchesi v. Stimmell,* 149 Ariz. 76, 716 P.2d 1013, 1016 (1986).

■ Both of these elements are noticeably lacking in this case. The Plaintiff has not submitted any evidence indicative of *severe* emotional distress. She alleges only crying, being stressed and upset, and having headaches. This is not sufficient to submit this claim to a jury. *See Midas Muffler Shop v. Ellison,* 133 Ariz. 194, 650 P.2d 496, 500 (App.1982) (collecting cases with examples of severe emotional distress). Further, the Plaintiff has not established any conduct that is outrageous. The conduct complained of does not go beyond all possible bounds of decency. *See Nelson v. Phoenix Resort,* 181 Ariz. 188, 888 P.2d 1375 (App.1994) (objectionable and embarrassing circumstances surrounding method of discharge did not rise to the level of outrageousness required to support claim intentional infliction of emotional distress and to defeat motion for summary judgment). This is true even if the conduct was motivated by sex discrimination or retaliation. *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.,* 183 Ariz. 550, 905 P.2d 559, 563 (App.1995) (failure to promote, forcing an employee to return to work and delivering a letter to her while in the hospital is not extreme and outrageous conduct). It is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988), *cert. denied,* 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990). This is not one of those rare cases. The Defendants are entitled to judgment as a matter of law as to Count Three because the Plaintiff has failed to show that her distress was severe or the Defendants' conduct was outrageous.

### V. Count Four: Public Policy Tort (Discrimination and Retaliation)

The Plaintiff alleges that Meza and NAC discriminated against her because of her gender and pregnancy, and also retaliated

against her when she complained about the misconduct. This, she avers, violates state and federal public policy, allowing her to recover in tort for wrongful discharge.

 The tort of wrongful discharge protects both at-will and non-at-will employees. *Fleming v. Pima County,* 141 Ariz. 149, 685 P.2d 1301, 1305–06 (1984). It is not grounded in contract, but rather recognizes that, even in the absence of an employment contract, an employer cannot discharge an employee for doing that which the law requires or for refusing to do that which the law forbids. To do so is tortious because it violates public policy articulated by constitutional, statutory or decisional law. *Wagenseller v. Scottsdale Memorial Hospital,* 147 Ariz. 370, 710 P.2d 1025, 1032–36 (1985).

 The Plaintiff must identify what public policy was violated by her discharge. *Woerth v. City of Flagstaff,* 167 Ariz. 412, 808 P.2d 297, 303 (App.1990). In this case, the Plaintiff points out that both state and federal civil rights law prohibit discrimination based upon gender and pregnancy. There is little doubt that discharging an employee for prohibited discriminatory reasons violates Arizona's public policy. Further, discharging an employee for her objections to discriminatory conduct violates Arizona's public policy as pronounced in the Arizona Civil Rights Act, A.R.S. § 41–1461. An employee cannot be discharged for opposing unlawful discrimination.

 The inquiry then focuses upon whether or not the employer's conduct was discriminatory, in violation of Arizona law. To establish a prima facie case of discrimination, the plaintiff must prove by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she was satisfactorily performing her job; and (3) her employer sought to replace her with a similarly qualified person. *Sengupta v. Morrison–Knudsen Co.,* 804 F.2d 1072, 1075 (9th Cir.1986) (citation omitted). *See also Yartzoff v. Thomas,* 809 F.2d 1371, 1377 (9th Cir.1987), *cert. denied,* 498 U.S. 939, 111 S.Ct. 345, 112 L.Ed.2d 309 (1990) (plaintiff must show protected activity, adverse employment decision, and causal link between the two).

 The Plaintiff in this case has failed to make the requisite showing to establish a prima facie case which would give rise to an inference of discrimination. As gender is protected, she is a member of a protected class. However, she has not come forward with evidence that at the time of her discharge, she was performing satisfactorily.

It is undisputed that when the Plaintiff went on maternity leave, Meza brought in another associate to fill in during the Plaintiff's ten week absence. The replacement associate complained about housekeeping inadequacies, stocking problems, and general disorganization at the Plaintiff's store. Meza ordered clean up and organization of the store. The replacement associate accomplished the clean up and organization, and increased the store's profitability during the Plaintiff's absence. Meza reviewed the records of the store, and considered its turn around during the Plaintiff's leave. He determined that the Plaintiff should be placed on an action plan to identify her weaknesses, to give her guidance on correcting her poor performance, and to convey to her the gravity of the situation. Meza and a human resources representative met with the Plaintiff shortly before her return from maternity leave. They explained to the Plaintiff the deficiencies Meza had discovered, and expressed their concern that the store had completely turned around under the supervision of the other associate while the Plaintiff was gone. Meza point out specific areas that the Plaintiff needed to address and correct. He explained that this was very serious and that failure to correct the deficiencies and give 100% could result in the Plaintiff's termination. He told the Plaintiff that he was giving her a chance to prove that she could do it. While she was "under the gun," this was her opportunity to prove that she could handle the position and excel in managing the store. He offered his support and promised to make weekly visits to assist and guide her.

While these facts are undisputed, the Plaintiff suggests that Meza's motivation for the meeting and imposing the action plan

were not legitimate business reasons. Rather, the Plaintiff contends, he was mounting a campaign to have her fired. The Plaintiff alleges that Meza treated her poorly from the beginning because she was a pregnant woman.

The Plaintiff admits that she was placed on an action plan before her discharge because her management of the store was below company standards. She does not dispute that at the time she was placed on the action plan, her supervision and upkeep of the store were substandard or unacceptable to the company. She therefore admits, or rather does not dispute, that prior to her maternity leave, her job performance had not been satisfactory. She stated that she had a tough time working while she was pregnant, had many things on her mind, and was perhaps not as focused as she should have been. She admitted that the cleanliness of the store is a matter of opinion and that perhaps she could have done better. Although she claimed the overstocking problems were not her fault, she admitted that there were overstocking problems. She did not challenge Meza's concern about the store organization or the lack luster performance of its associates. She had been counseled by a previous supervisor about similar problems. Moreover, similarly situated males had also been placed on action plans for poor performance. This does not establish that she was performing satisfactorily before she was terminated.

The stated reasons for her termination were that: (1) she failed to report a falsification of a time card; (2) she violated company policy by allowing an employee to take home a part without bringing in the defective part for exchange; and (3) she violated company policy by taking home promotional merchandise during promotion. Although she knew that an employee had billed the company for time that the employee was not working, the Plaintiff did not report the time card falsification. The Plaintiff stated that she did not see the need to report it, because it had already been reported by someone else.

When one of her employees showed her a receipt for a rotor cap he had purchased at the store and explained that it was defective, the Plaintiff allowed the employee to take another rotor cap without bringing in the defective one for exchange. She believed that the company's management judgment philosophy allowed her to make judgment decisions of this sort in order to further the ends of customer service. The company responds that no such policy exists that allows store managers to do this where the customer is an employee.

The store was running a promotion on an oil product where customers were given a free small, nylon "T–Plus" bag with the purchase of the oil product. The bags were provided by the manufacturer at no cost to NAC. During the promotion, the Plaintiff took one of the bags home, and allowed others to take bags home, even though none of them purchased the oil product. The company viewed this as theft, the Plaintiff viewed it as company practice.

The Plaintiff attempts to challenge the proffered reasons for her termination, in effort to show that they were not valid—that she had not violated any company policies. Assuming for the purposes of this motion that the Plaintiff is correct in her suggestion that she did not violate any company policies, that does not support an inference of discrimination. Even if the Plaintiff did not violate any stated company policy, she can still be discharged without cause or for other cause. The Defendants aptly cite to *Walker v. AT & T Technologies*, 995 F.2d 846 (8th Cir.1993), which states that wrong or unpopular business decisions are not unlawful. Even if the company was wrong, even if the reasons for firing the Plaintiff were not factually accurate, they are not evidence of discrimination or any bad cause.

In effort to show that the reasons given for her termination were not only wrong but were a pretext for discrimination, the Plaintiff points to Meza's comments to her. When she said she was taking ten weeks maternity leave, Meza said "ten weeks?" and then said "aren't we special?" He also said that he may not be able to secure her job in that store for ten weeks. This, claims the Plaintiff, demonstrates his discriminatory animus towards her. Further, she had complained to various supervisors about Meza's poor treatment of her. The Plaintiff alleges that

because of her complaints about Meza's discriminatory conduct, he retaliated by trying to get her fired.

While she makes these bare allegations, she presents no evidence to support them other than her testimony about her feelings and his attitude. She has not presented any evidence to link her complaints about Meza to any negative action by Meza. She has not shown that the action plan was a result of her complaints, or that Meza influenced Robert Montgomery's decision to fire the Plaintiff. None of the reports of the company violations that were the proffered reasons for the termination are attributable to Meza. The reports came from other sources and were conveyed to Meza. The facts, taken in a light most favorable to the Plaintiff, do not support her bare allegations of discrimination or retaliation for opposing discrimination.

In her deposition, the Plaintiff testified that in addition to his comments of "ten weeks," "aren't we special" and not being able to secure her job, he also complained when she took a lunch break. Shortly before she went on maternity leave, she was eating lunch when Meza came in an complained that she was taking a half hour for lunch. The Plaintiff believes his dissatisfaction with a thirty minute lunch for a seven and a half month pregnant person is unreasonable and is evidence of his discriminatory animus against her. Other than her subjective feelings, there is nothing to suggest that Meza's concern was anything other than store productivity. She shows no facts indicating his behavior was motivated by her gender or her pregnancy. Again, she does not point to any evidence that would support a finding of discrimination.

As the party opposing the summary judgment motion, the Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). As such, even if the Plaintiff had established a prima facie case of discrimination, the Defendants have come forward with legitimate, nondiscriminatory reasons for their treatment of the Plaintiff. The Plaintiff has not "raised a genuine factual issue as to whether the articulated reason was pretextual." *Sischo–Nownejad v. Merced Community College Dist.*, 934 F.2d 1104, 1110 (9th Cir.1991). Her allegations that Meza treated her differently because she was pregnant or a woman are conclusory. Her allegations that Meza retaliated against her after she reported alleged discrimination are not supported by any facts in the record. "Conclusory allegations unsupported by factual data will not create an issue of triable issue of fact." *Marks v. United States,* 578 F.2d 261, 263 (9th Cir.1978) (citation omitted). The Plaintiff's subjective beliefs are insufficient for a jury to return a verdict in her favor. Rather than submitting specific facts, she relies on her feelings about her treatment and some undescribed attitude on Meza's part. This is not significant probative evidence. Even drawing all reasonable inferences in favor of the Plaintiff, she has not provided sufficient evidence to support her claim that the Defendants discharged her in violation of Arizona public policy. Accordingly, the Court must grant the Defendants' motion for summary judgment as to Count Four.

## VI. Count Five: Tortious Interference with Contract

The Plaintiff alleges in Count Five that the Defendant Meza interfered with her contractual relationship and/or business expectancy that she had with NAC.

 Interference with contract requires, among other things, a contract between the plaintiff and a third party. *See, e.g., Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 710 P.2d 1025 (1985) (stating the elements of a cause of action for intentional interference with contract). Defendants who are acting within the scope of their authority, for the benefit of their employer, are the employer and cannot interfere with their own contract. *Payne v. Pennzoil Corp.*, 138 Ariz. 52, 672 P.2d 1322 (App.1983); *Barrow v. Arizona Board of Regents,* 158 Ariz. 71, 761 P.2d 145 (App.1988).

 There is no third party in this case. The Plaintiff alleges that Meza was acting on behalf of and for the benefit of NAC. In this

instance, neither Meza nor NAC cannot interfere with their own contract. *See Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.,* 183 Ariz. 550, 905 P.2d 559, 564–66 (App.1995).

However, if Meza's actions were "improper," he can be liable. *Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 710 P.2d 1025 (1985) (en banc). The Plaintiff alleged, but has not factually supported her allegations that Meza acted improperly by discriminating against her and retaliating against her. She has not presented sufficient evidence for a jury to conclude that Meza was acting improperly rather than legitimately for the benefit of NAC. *See Lindsey v. Dempsey,* 153 Ariz. 230, 735 P.2d 840, 843 (App.1987) (interference with contract a question of law where there is no evidence of improper motive) (citation omitted). He therefore did not interfere with any contract between the Plaintiff and NAC. Drawing all inferences in favor of the Plaintiff, summary judgment is appropriate in favor of the Defendants.

## VII. Count Six: Defamation

The Plaintiff alleges that the Defendants intentionally made and published false statements about her honesty and job performance. The Defendants submit that the Plaintiff has not provided evidence to support any of the elements of this cause of action.

▉ Defamation is the publication to a third party, of a false, defamatory statement of and concerning the plaintiff that is not privileged. *See e.g., Yetman v. English,* 168 Ariz. 71, 811 P.2d 323 (1991). The Defendants argue that there is no third party in this instance because the alleged defamatory statements were internal company employee performance evaluations. These are not publications for purposes of defamation claims. The Plaintiff responds that the publication in this case comes from herself That is, she is obligated to reveal to prospective employers the reasons (theft and dishonesty) for her termination. This, she asserts, is "self-defamation" and is actionable.

▉ The Plaintiff cites no authority for this proposition. While some courts have recognized a tort of compelled "self-publica-tion," Arizona courts are not among them. The RESTATEMENT (SECOND) OF TORTS § 577 cmt. m disagrees with the Plaintiff's assertion and provides that there is no defamation where the defamed person is the recipient of the communication and then publishes it to a third person. Because there is no Arizona authority on point and because the Restatement is consistent with Arizona's defamation common law, this Court believes the Arizona Supreme Court would follow the Restatement. *See Maricopa County v. Leppla,* 89 Ariz. 220, 360 P.2d 227 (1961) (Arizona courts will follow the Restatement unless it appears that they are committed to some other rule of common law).

▉ Further, the Plaintiff has not met her burden of coming forward with probative evidence on the other elements of defamation. She has not submitted any evidence that the statements were false. She admitted in her deposition that the statements were either true, had a factual basis or were opinions. Neither has she submitted any evidence to overcome NAC's qualified privilege regarding internal personnel communications. Her defamation claim is not well-grounded in law and is not factually supported. The Plaintiff has failed to come forward with evidence of the issues to which she would bear the burden of proof at trial. She has not created any factual issue, so the Defendants are entitled to judgment as a matter of law on Count Six.

## VIII. Punitive Damages

▉ The Defendants challenge the Plaintiff's claims for punitive damages because she has failed to show anything more than the underlying tort. This is not enough under *Thompson v. Better–Bilt Aluminum Products Co.,* 171 Ariz. 550, 832 P.2d 203 (1992), which requires a wrongfully discharged plaintiff to show by clear and convincing evidence that the employer deliberately intended injury or consciously disregarded the unjustifiable, substantial risk of harm to the plaintiff.

The Plaintiff has not produced sufficient evidence to overcome the present motion for summary judgment. Therefore, there is no basis for her to seek punitive damages.

## CONCLUSION

The Plaintiff has failed to demonstrate a material issue of fact warranting a trial. Accordingly,

**IT IS ORDERED** that:

(1) Defendants' "Motion for Summary Judgment on Plaintiff's Claim of Gender Discrimination" filed January 30, 1996 is **GRANTED**;

(2) Defendants' "Motion for Summary Judgment on Counts One, Two, Three, Five and Six of Plaintiffs Complaint, and Plaintiff's Request for Punitive Damages" filed January 30, 1996 is **GRANTED**;

(3) there being no just reason for delay, the Clerk of the Court is directed to enter judgment in favor of the Defendants on Counts One–Six; and

(4) as to the remaining claim in Count Seven, the parties shall file a joint proposed pretrial order not later than July 25, 1996.