Abigail VILLODAS, Plaintiff,

v.

HEALTHSOUTH CORPORATION, and Molly Callanan, Defendants.

No. CIV.02–2527–PHX–MHM.

United States District Court,
D. Arizona.

Sept. 29, 2004.

L. Traywick Duffie, Kelly D. Ludwick, Donna L. Keeton, Admitted Pro Hac Vice, Hunton & Williams, Atlanta, GA, Tibor Nagy, Jr. (# 007465), Snell & Wilmer L.L.P., Tucson, AZ, for Defendants.

## ORDER

MURGUIA, District Judge.

Plaintiff, a former employee of Defendant HealthSouth Corporation ("HealthSouth") has filed a Complaint alleging that she was discriminated against based on her age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq. (Count I); and race (Hispanic) and/or national origin (Puerto Rican), in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 (Counts II and III). The claims asserted in Counts I through III are against Defendants HealthSouth and Molly Callanan, a HealthSouth employee and Plaintiff's supervisor at the time of the relevant events. Plaintiff also has asserted a state law claim for tortious interference with contract against Defendant Callanan (Count IV).

Plaintiff's Complaint further contains allegations involving emotional distress and respondeat superior (Count V).[1]

Defendants have filed motions for summary judgment, supported by legal memoranda, as to all of Plaintiff's claims (Doc. 39–42). Defendants also have filed a joint statement of undisputed material facts on summary judgment with exhibits (Doc. 43 & 44). Plaintiff has filed a response on summary judgment (Doc. 47) but did not file a separate statement of facts as required by Local Rule 1.10(1). Defendants have filed their respective reply memoranda (Doc. 48 & 49). The Court enters the following Order on Defendants' motions for summary judgment.

## I.

### Standard of Review.

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). *See also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## II.

### Background Facts.

Defendant HealthSouth Corporation ("HealthSouth") owns and/or operates healthcare facilities in the United States and other countries. Plaintiff became a HealthSouth employee in or about September 1996 when HealthSouth purchased Professional Sports Care ("PSC"), a rehabilitation facility in New York state where Plaintiff was employed. At the time, Plaintiff worked at the PSC rehabilitation center as Director of Rehabilitation. After HealthSouth purchased the PSC facility, Plaintiff's title became "Administrator" although her duties remained substantially the same.

In May 1997, Plaintiff requested and was granted a transfer to the Phoenix area where she began working as a Staff Physical Therapist ("PT") within HealthSouth's "Paradise Valley cost center". She remained in this position until she was "laid off" from employment on November 10, 2001. At the time of the employment decision in this case, Plaintiff was over the age of 40.

The "Paradise Valley cost center" consists of a group of four outpatient rehabilitation facilities that are linked for administration and budgeting purposes. At the time of her layoff, and for several months prior, Plaintiff worked at one of these four facilities known as the East Bell Road facility. Of the four facilities in the Paradise Valley cost center, the East Bell Road facility was the only facility with two full-time PTs. Melissa Burrill was the other therapist at the East Bell Road facility. Ms. Burrill also served as the Site Coordinator. Plaintiff reported to Ms. Burrill who in turn reported to the Administrator

---

**1.** Plaintiff's claims for emotional distress and respondeat superior are both labeled as "Count V."

of the Paradise Valley cost center, Defendant Molly Callanan. Ms. Callanan began working for HealthSouth in 1999 as a Staff PT. In 2000, she was promoted to Administrator of the Paradise Valley cost center.

In July 2000, Ms. Callanan prepared a Performance Appraisal regarding Plaintiff in which Plaintiff received an overall rating of "3" on an ascending scale of "1" to "4". In September 2001, Ms. Burrill completed a Performance Appraisal concerning Plaintiff in which Plaintiff received an overall rating of "3.5". Ms. Burrill noted on the appraisal form that Plaintiff's productivity of 79% needed to be increased to a 90% monthly average.

In October 2001, Mr. Glenn McDowell became Regional Director of Operations for HealthSouth's outpatient rehabilitation operations in Arizona which included the Paradise Valley cost center. Shortly after assuming this position, Mr. McDowell analyzed various financial performance statistics and related factors, and concluded that PT staff reduction was necessary because the Paradise Valley cost center was not meeting its patient volume and generally was not profitable. Mr. McDowell determined that to improve the cost center's performance it would be necessary (a) to eliminate one PT position, thereby reducing the number of PTs within the Paradise Valley cost center from five to four, and (b) to have cost center Administrator Callanan (Defendant), a licensed therapist who treated patients on a part-time basis, treat an increased number of patients in addition to performing her administrative functions.

Mr. McDowell and Ms. Callanan conferred about which PT should be laid off, considering the following factors related to the East Bell Road facility: (i) it was the only facility in the cost center with two full-time therapists; (ii) the facility's patient volume did not justify two full-time therapists; (iii) Ms. Burrill, the other therapist at that facility besides Plaintiff, also was the Site Coordinator; and (iv) Ms. Burrill had consistently higher productivity numbers than Plaintiff. Mr. McDowell also thought that Ms. Burrill had significant physician relationships that could lead to increased patient volume. A review of the cost center as a whole indicated that Plaintiff's productivity numbers were the lowest among the five full-time PTs in the cost center for both September and October 2001. Because it was reasonable to administratively conduct the layoff at the East Bell Road facility, Mr. McDowell and Ms. Callanan selected Plaintiff for layoff. At the time of this decision, another PT within the Paradise Valley cost center was four years older than Plaintiff.

On November 10, 2001, Ms. Callanan, in her role as Administrator, met with Plaintiff at the East Bell Road Facility to inform her of the layoff decision. Ms. Dee Maras, Callanan's administrative assistant, also attended the meeting. During this meeting, Ms. Callanan stated that Plaintiff's position was being eliminated for economic reasons. Plaintiff testified during her deposition that Ms. Callanan told her that she was being discharged because her position was being eliminated due to low patient volume. Ms. Callanan also told Plaintiff that the patient volume at the East Bell Road facility did not support two full-time therapists. Plaintiff asked Ms. Callanan why a therapist with less tenure with HealthSouth was not being laid off instead of Plaintiff. According to Plaintiff, Ms. Callanan did not respond. Plaintiff admitted during her deposition that her productivity in the months immediately prior to her layoff was below HealthSouth's expectations and that Ms. Callanan and/or Ms. Burrill discussed her unsatisfactory productivity numbers with her.

Neither Ms. Callanan nor Ms. Maras said anything during the meeting about

Plaintiff's age, race or national origin. Plaintiff admits that neither Callanan nor Maras mentioned anything about Plaintiff's age, race or national origin during the meeting. Both Mr. McDowell and Ms. Callanan testified during their depositions that they did not consider Plaintiff's age, race or national origin in the decision to lay off Plaintiff. Plaintiff testified during her deposition that no one at HealthSouth ever told her that her age, race or national origin were factors in the layoff decision and that she has no evidence that she was laid off based on these factors. Plaintiff did not lodge any type of internal complaint or report claiming age, race or national origin discrimination at HealthSouth prior to her layoff. .

At the time of the employment decision, Plaintiff was earning a salary of $60,513.44, which is the equivalent of approximately $29.09 per hour. After the layoff, Plaintiff received two weeks of severance pay from HealthSouth and was paid for her accrued but unused paid time off.

On December 18, 2001, within six weeks of her layoff from HealthSouth, Plaintiff was hired as a PT at Banner Health System ("Banner") in the Phoenix area. At Banner, Plaintiff works varying days and is generally assigned to work 36 hours one week and 44 hours the next week. Plaintiff's initial wage rate at Banner was $29.00 per hour. She received a pay increase in December 2002 and she currently earns a base pay of $30.04 per hour at Banner. Plaintiff also may receive overtime premium pay. During 2002, Plaintiff received a $1,750 bonus from Banner.

After Plaintiff's layoff, the Paradise Valley cost center's PT staff was decreased from five full-time PTs to four. Ms. Callanan began treating patients part-time at the East Bell Road facility. In February 2002, HealthSouth obtained a contract with CIGNA HealthCare of Arizona, Inc.

("CIGNA") which resulted in an immediate and substantial increase in HealthSouth's patient volume at its Arizona facilities, including the East Bell Road facility and others in the Paradise Valley cost center. At present, the Paradise Valley cost center has four full-time PT's and one part-time PT.

On or about September 3, 2002, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. In her EEOC charge, Plaintiff stated that she had been told that there was a drop in the need from 2 to 1 physical therapists at her location and that she believed that she had been discharged "in order to cut corners and cut the company's expense budget." The EEOC issued a Dismissal and Notice of Rights with regard to Plaintiff's Charge on or about September 16, 2002, without making any finding or determination.

### III.

#### Discussion.

(A) *Plaintiff's Discrimination Claims asserted against both Defendants.*

Plaintiff has asserted claims based on age discrimination under the ADEA (Count I), national origin discrimination under Title VII and § 1981 (Counts II and III), and respondeat superior (Count V) against both Defendants. A plaintiff may establish a prima facie case of disparate treatment in one of two ways. The plaintiff may offer direct evidence of the employer's discriminatory intent. Alternatively, the plaintiff may establish a prima facie case through a presumption arising from proof of the factors discussed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir.1994). If the plaintiff establishes a prima facie case, the bur-

den then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive that is discriminatory. *See Jurado v. Eleven–Fifty Corporation,* 813 F.2d 1406, 1409 (9th Cir.1987)(Title VII disparate treatment claim); *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1220 (9th Cir.1998)(age discrimination claim).

■ The ADEA makes it "unlawful for an employer . . . to fail or refuse to hire or discharge any individual [who is at least 40 years old] . . . because of such individual's age. 29 U.S.C. § 623(a)(1). Title VII prohibits employment discrimination on account of race and national origin. *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30,* 694 F.2d 531, 536 (9th Cir. 1982). In discrimination claims brought under the ADEA or Title VII, although the standard summary judgment principles apply, the burden shifting analysis may be used to determine if summary judgment is appropriate. *Rose v. Wells Fargo & Co.,* 902 F.2d 1417, 1420 (9th Cir.1990)("[t]he shifting burden of proof applied to a Title VII discrimination claim also applies to claims arising under ADEA"). *See also, Wallis,* 26 F.3d at 888–89 (burden of proof and persuasion in the Ninth Circuit are the same under Title VII and the ADEA); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000) (applying *McDonnell Douglas* framework to age discrimination case).

■ To make a prima facie case of age discrimination under the ADEA in the context of employment termination, a plaintiff must show that she was (1) more than 40 years of age at the time of the challenged employment action; (2) she was satisfactorily performing her employment responsibilities (3) she was discharged from employment; and (4) a substantially younger employee with equal or inferior qualifications was chosen for the position. *See Coleman v. Quaker Oats Co.,* 232 F.3d 1271, 1281 (9th Cir.2000); *Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667, 672 (9th Cir.1988). To the extent that this case can be considered as a reduction-in-force case, the failure to prove replacement by a younger employee is not necessarily fatal to an age discrimination claim. Rather, plaintiff is required to show through circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination. In a reduction-in-force case, no adverse inference can be drawn from an employee's discharge if her position and duties are completely eliminated. *Rose,* 902 F.2d at 1421. A plaintiff's case "crumbles" unless she can demonstrate a continuing need for the same services and skills. *Id.*

■■ In order to establish a prima facie case of race or national origin discrimination through the use of the *McDonnell Douglas* factors, the plaintiff must show the following: (1) that she belonged to a protected class; (2) that she was qualified for the position; (3) that she was subject to an adverse employment action; and (4) that similarly situated individuals outside her class were treated more favorably. Again, to the extent that this case involves a reduction-in-force allegedly carried out with discriminatory intent, the plaintiff may establish a prima facie case of unlawful discrimination under Title VII by showing that she belonged to a protected class; that she was discharged from a job for which she was qualified; and that others not in her protected class were treated more favorably. *Washington v. Garrett,* 10 F.3d 1421, 1434 (9th Cir.1993).

Under 42 U.S.C. § 1981, discrimination based on "ancestry or ethnic characteristics" is prohibited. *St. Francis College v. Al–Khazraji,* 481 U.S. 604, 612, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987). "Although national origin discrimination is not within the ambit of § 1981, race has been defined broadly to cover immigrant ethnic groups." *Fonseca v. Sysco Food Services of Arizona, Inc.,* 374 F.3d 840, 850 (9th Cir.2004). "Analysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case.... Both require proof of discriminatory treatment and the same set of facts can give rise to both claims." *Id.*

### (1) *Individual Liability.*

Individual defendants, such as Defendant Callanan, cannot be held liable under either Title VII or the ADEA. *See Pink v. Modoc Indian Health Project, Inc.,* 157 F.3d 1185, 1189 (9th Cir.1998). Plaintiff's claims based on Title VII and the ADEA (Counts I through III and V) asserted against Defendant Callanan are dismissed.

### (2) *Plaintiff's ADEA and Title VII Claims Against HealthSouth (Counts I through III and V).*

Defendant HealthSouth contends that Plaintiff has no direct or statistical evidence of discrimination. Defendant further contends that there is no evidence giving rise to an inference of discrimination and that Plaintiff cannot show that she was replaced by anyone, much less by someone outside the protected group and/or by someone substantially younger. Defendant HealthSouth supports its arguments with the following undisputed facts. The Paradise Valley cost center was not operating profitably and lacked sufficient patient volume to justify the number of PTs employed at the time of the layoff. Mr. McDowell and Ms. Callanan conferred and decided that Plaintiff should be laid off because she worked at a facility that could not support two full-time PTs. Plaintiff's productivity was lower than that of Ms. Burrill, the other PT at the facility, and was in fact the lowest among all the five full-time PTs within the cost center.

After Plaintiff's layoff, the Paradise Valley cost center's PT staff was reduced from five to four full-time PTs, with Defendant Callanan increasing her patient care duties at the East Bell Road facility but still treating patients on a part-time basis. Plaintiff's former patient load was absorbed by Ms. Burrill, Defendant Callanan and other therapists working at the cost center as necessary. In February 2002, several months after Plaintiff's layoff, HealthSouth hired a part-time PT, Shari Allen, to work within the Paradise Valley cost center. This part-time hire occurred because HealthSouth obtained a new contract with CIGNA which led to an unexpected, immediate and substantial increase in patient volume at HealthSouth's Arizona outpatient rehabilitation facilities, including the Paradise Valley cost center. Even then, the cost center still had only four full-time PTs plus one part-time PT in addition to Defendant Callanan.

In addition to these facts, HealthSouth emphasizes that there is no evidence that Mr. McDowell or Defendant Callanan, who were responsible for the layoff decision, knew Plaintiff's age, race or national origin. Moreover, PT Andy Clary, who was retained by Mr. McDowell and Defendant Callanan, is actually older than Plaintiff.

In her opposition to Defendants' motions for summary judgment, Plaintiff has identified no specific fact or facts that are in dispute between the parties. Rather, Plaintiff contends that credibility issues exist among HealthSouth's officials, such as, for example, whether these officials knew of Plaintiff's age. Plaintiff also

states in part as follows regarding the facts as presented by HealthSouth:

Plaintiff could go on an [sic] on about the many testimonial disputes that arose during depositions of Plaintiff and Defendant-called witnesses. Instead, Plaintiff, agreeing with Defendant [HealthSouth's motion] to a limited degree [at p. 6, lines 8–9 therein] that there is an 'interest of brevity' in arguing this motion, will not repeat every dispute that occurred during the deposition testimony. Plaintiff notes, however, that Defendants have self-characterized factors which they claim were used as criteria for Plaintiff's dismissal from employment as 'objective and undisputed business reasons' because they say so.

(Doc. 47 at p. 4). Plaintiff further alleges by inference that HealthSouth may have engaged in a pretextual explanation for the employment decision, alleging that various "top HS officials" have been the subject of criminal allegations. Plaintiff thereafter has asked that the Court deny HealthSouth's motion for summary judgment or, in the alternative, take the case "off track" until further resolution of the alleged criminal investigation. In support of her argument, Plaintiff has attached to her response on summary judgment "news stories" allegedly related to criminal actions involving HealthSouth officials. According to Plaintiff, the purpose of these "news stories" is as a "link" to the deposition testimony of Mr. McDowell and Defendant Callanan concerning the alleged legitimate business reasons for Plaintiff's layoff. Plaintiff contends that these "news stories" undermine or at least throw into dispute HealthSouth's claim that Plaintiff's layoff occurred for business reasons.

▪ "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because 'the ulti-mate question is one that can only be resolved through a searching inquiry'—one that is most appropriately conducted by a fact finder, upon a full record." *Chuang v. University of California Davis Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000).

▪ In the instant case, Defendant HealthSouth has shown, based on undisputed admissible facts, that Plaintiff was laid off based on corporate business reasons and that age, race and/or national origin played no part in the employment decision. Plaintiff has failed to bring to the Court's attention any evidence that the employment decision occurred as a result of unlawful reasons related to age, race or national origin. Plaintiff's discussion of media accounts of alleged accounting irregularities involving HealthSouth officials who had no involvement with the employment decision at issue are not relevant to Plaintiff's discrimination claims. Moreover, these "news stories" are not admissible evidence on summary judgment. *See Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir.1991)(newspaper articles are generally inadmissible hearsay if offered for the truth of the matter asserted). To survive summary judgment, Plaintiff "must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). The Court has no obligation to "scour" the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir.1996)(it is not the court's task to scour the record in search of a genuine issue of triable fact; the court relies on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment). Reliance on mere speculation, conjecture, or fantasy cannot defeat a motion

for summary judgment. *See The Jeanery, Inc. v. James Jeans, Inc.,* 849 F.2d 1148, 1151–52 (9th Cir.1988).

■■■■■ "A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law.'" *Green v. Maricopa County Cmty. Coll. Sch. Dist.,* 265 F.Supp.2d 1110, 1118 (D.Ariz.2003). Defendant HealthSouth has shown in its motion for summary judgment that there is an absence of evidence to support Plaintiff's discrimination claims. For these same reasons, Plaintiff's ADEA and Title VII claims, to the extent based on respondeat superior liability as asserted in Count V, likewise fail. *See Miller v. Maxwell's Int'l, Inc.,* 991 F.2d 583, 587 (9th Cir.1993)(agency liability in Title VII and ADEA incorporates respondeat superior liability into the statute); *Federation of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1215 (9th Cir.1996)(liability under § 1981 cannot be premised upon respondeat superior). Defendant HealthSouth's motion for summary judgment on Plaintiff's discrimination claims asserted in Counts I through III and V, based on the ADEA and Title VII, is granted.

(3) *Plaintiff's § 1981 Employment Discrimination Claims Asserted Against Both Defendants (Count II and III).*

■■■■ As discussed above, "[a]nalysis of an employment discrimination claim under § 1981 follows the same legal principles as those applicable in a Title VII disparate treatment case." *Fonseca,* 374 F.3d at 850. For the reasons discussed in section III(A)(2) above, Defendants' motions for summary judgment on Plaintiff's discrimi-

nation claims based on § 1981 asserted in Counts II and III are granted.

(B) *Plaintiff's State Law Claim (Count IV).*

■■■■ Defendant Callanan has moved for summary judgment as to Plaintiff's claim for tortious interference with contractual relationship asserted in Count IV. To establish a claim for tortious interference, Plaintiff must establish the following: (a) the existence of a valid contractual relationship between Plaintiff and HealthSouth to which Callanan was a third party; (b) Callanan's knowledge of the contractual relationship; (c) intentional interference by Callanan inducing or causing a breach or termination of the relationship or expectancy; (d) that such interference was improper; and (e) resultant damage. *See Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,* 184 Ariz. 419, 427, 909 P.2d 486, 495 (Ariz.App.1995). Defendant Callanan contends that, under Arizona law, "[d]efendants who are acting within the scope of their authority, for the benefit of their employer, are the employer and cannot interfere with their own contract." *Spratt v. Northern Automotive Corp.,* 958 F.Supp. 456, 464 (D.Ariz.1996). *See also, Kelley v. City of Mesa,* 873 F.Supp. 320, 333 (D.Ariz.1994)("when an employer's employees are acting within the scope of their employment, they cannot be liable for interference with another employee's relationship with the employer"). Ms. Callanan contends that it is undisputed that her participation in Plaintiff's layoff occurred within the course and scope of her employment with HealthSouth. Defendant cites her deposition testimony and that of Mr. McDowell that it was Callanan's responsibility as Administrator to inform Plaintiff of the layoff decision.

Plaintiff in her response on summary judgment has not cited any fact that dis-

putes Defendant Callanan's contention nor has she provided any legal analysis in support of her tortious interference claim. Plaintiff has failed to establish a genuine issue as to any material fact that would defeat Defendant Callanan's motion for summary judgment on Count IV. Defendant Callanan's summary judgment motion is therefore granted.

(C) *Plaintiff's Emotional Distress Allegation (Count V).*

Defendants contend that Plaintiff appears to seek damages for emotional distress in Count V. It does not appear that Plaintiff has asserted a separate claim for relief for infliction of emotional distress. *See, e.g., Johnson v. McDonald,* 197 Ariz. 155, 3 P.3d 1075 (Ariz.App.1999)(intentional infliction of emotional distress). Plaintiff has not provided a separate statement of facts or legal analysis regarding her "emotional distress" claim. Defendants' motions for summary judgment on Plaintiff's "emotional distress" claim (Count V) are granted.

**Accordingly,**

**IT IS ORDERED** that Defendant HealthSouth's motion for summary judgment as to Claims I through III and V (Doc. 41) is granted.

**IT IS FURTHER ORDERED** that Defendant Callanan's motion for summary judgment as to Claims I through V (Doc. 39) is granted.

**IT IS FURTHER ORDERED** that Judgment in favor of Defendants shall be entered accordingly.

### JUDGMENT IN A CIVIL CASE

___ **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

X **Decision by Court.** This action came for consideration before the Court.

The issues have been considered and a decision has been rendered.

IT IS ORDERED AND ADJUDGED that Defendant HealthSouth's Motion for Summary Judgment as to Claims I through III and V [41–1] is granted and Defendant Callanan's Motion for Summary Judgment as to Claims I through V [39–1] is granted, therefore, the Plaintiff shall take nothing. This complaint and action are hereby dismissed.